UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AREZUE COLLIER, an individual </br></br>          Plaintiff, </br></br>  v. </br></br>ULTA SALON, COSMETICS AND FRAGRANCE, INC., a Deleware corporation; et al., </br></br>          Defendants. | CASE NO. CV 18-8700-R </br></br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND |

      Before the Court is Plaintiff's Motion to Remand, which was filed on November 9, 2018. (Dkt. No. 7). Having been thoroughly briefed by both parties, this Court took the matter under submission on December 10, 2018.

      Plaintiff Arezue Collier ("Plaintiff") worked for Defendant ULTA Salon, Cosmetics and Fragrance, Inc. ("Defendant" or "ULTA") from August 23, 2016 to September 22, 2017 as a salon manager at its store located in Rolling Hills Estates, California. On September 11, 2017, Plaintiff submitted a written complaint to ULTA indicating that she believed she was being harassed and intimidated by the store's general manager, Kirkland, in part for disclosing and refusing to participate in an activity that she believed to be a violation of law. Plaintiff was subsequently

accused of "punch card fraud," which she contends was false and fabricated by Kirkland. Plaintiff also claims that she was forced to sign a false confession on September 19, 2017 in order to keep her job but that her employment was nonetheless terminated on September 22, 2017 for the alleged punch card fraud. Plaintiff claims that the termination was wrongful and done in retaliation for her complaint regarding Kirkland.

On August 29, 2018, Plaintiff filed a Complaint in the Superior Court of California for the County of Los Angeles (Case No. BC719605). The Complaint asserts causes of action for: (1) retaliation in violation of California Labor Code sections 1102.5 and 1102.6; (2) unfair competition in violation of California Business and Professions Code section 17200 *et seq.*; (3) violation of the California Private Attorneys General Act (PAGA); and (4) wrongful termination in violation of public policy. Defendants timely removed the action to federal court on October 10, 2018 on the basis of diversity jurisdiction. Plaintiff now moves to remand this case to state court on the grounds that Defendant cannot prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. Defendant opposes, arguing that Plaintiff's potential recovery for lost wages, emotional distress, punitive damages, statutory penalties, and attorneys' fees exceed $75,000.

A defendant may remove a civil action from state court if the action could have originally been filed in federal court. 28 U.S.C. § 1441(a). "The burden of establishing federal subject matter jurisdiction falls on the party invoking removal." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009). The removing party must prove its jurisdictional allegations by a preponderance of the evidence. *Id.* at 567. If the complaint does not clearly establish the jurisdictional amount, then the court may consider facts in the removal petition. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). Courts "may view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists…." *Jankins v. Wells Fargo Bank, N.A.*, No. CV 17-00887 BRO (AJW), 2017 WL 1181562, at *3 (C.D. Cal. March 29, 2017). The Federal Rules do not require that evidence in support of or in opposition to a motion to remand be admissible. *See id.*

Federal courts have diversity jurisdiction over civil actions where the amount in

controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. 28 U.S.C. § 1331. For purposes of diversity jurisdiction, a corporation is a citizen of the state in which it is incorporated and the state where it maintains its principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). Diversity is determined by the state of the facts at the time the action was filed. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004).

The parties do not dispute that there is complete diversity of citizenship between them. However, the parties do dispute whether the required jurisdictional amount in excess of $75,000 has been satisfied. Having reviewed the parties' briefs and supporting evidence, the Court finds that Defendant has not established the requirements for diversity jurisdiction by a preponderance of the evidence.

Plaintiff claims lost wages of approximately $3,500. She contends that she fully mitigated her lost wages damages as of late October 2017, only about one month after she was terminated by Defendant. This amount is properly included in the parties' calculations of the amount in controversy.

Plaintiff seeks emotional distress damages in excess of $25,000. Defendant contends that a reasonable estimate for Plaintiff's emotional distress damages "could be $50,000." In support of this contention, Defendant cites to several employment cases in which substantial emotional distress damages were awarded; however, none of those cases are factually analogous to the case at hand, and some of them involve distinct legal claims as well. Although cases introduced as evidence to prove the amount in controversy need not be perfectly analogous to the case at hand, they must provide a fair and reasonable basis for comparison. *Rivera v. Costco Wholesale Corp.*, 2008 U.S. Dist. LEXIS 58610 (N.D. Cal. July 11, 2008) and *Iwekaogwu v. City of L.A.*, 75 Cal. App. 4th 803, 821 (1999), both cited in Defendant's Notice of Removal (Dkt. No. 1), were brought under FEHA and involved claims of discrimination and (in *Rivera*) intentional infliction of emotional distress, in addition to retaliation. This is not a discrimination case and the allegations are not so factually similar that *Rivera* or *Iwekaogwu* should be considered analogous for purposes of determining the amount in controversy here. The complaint in *Gardenhire v. Hous. Auth*, 85 Cal. App. 4th 236, 239-40, included claims of slander, discrimination, and

intentional infliction of emotional distress, in addition to claims similar to Plaintiff's here, and included allegations that the plaintiff's supervisor yelled at her, called her a liar, threatened to have her terminated, and admitted that she would have gone through with the termination had it not been for the lawsuit being filed. *Steffens v. Regus Grp., PLC*, 2009 U.S. Dist. LEXIS 36006 (S.D. Cal. Apr. 27, 2009), involved age discrimination under FEHA. *Manuel v. Heart to Heart Care, Inc.*, Los Angeles Superior Court Case No. BC527985 (2015), involved similar facts with respect to the plaintiff's retaliatory termination; however, the facts differed significantly with respect to the plaintiff's ability to find comparable full-time employment after termination. Finally, in *Marlo v. United Parcel Service, Inc.*, 2009 WL 10669253 (C.D. Cal. Nov. 8, 2012), all of the plaintiff's claims were based on his employer's alleged misclassification of the plaintiff as an exempt employee not entitled to overtime compensation or compensation for missed meal or rest periods. None of these cases are sufficiently analogous to the case at hand so as to provide a reasonable basis for estimating the amount in controversy here.

Plaintiff seeks punitive damages also in excess of $25,000. As with emotional distress damages, punitive damages are included in the amount in controversy calculation. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Defendant contends that Plaintiff's punitive damages, should she prevail, may alone exceed the $75,000 jurisdictional threshold. However, as with emotional distress damages, Defendant has failed to provide a reasonable estimate of Plaintiff's potential punitive damages award. Defendant cites to multiple cases involving similar legal claims and resulting in substantial punitive damages awards, but Defendant makes no effort to explain why these cases are factually similar and may be predictive of punitive damages in this case. Plaintiff's Complaint does not contain specific allegations supporting a substantial punitive damages award, and Defendant has not provided any evidence of its financial condition or attempted any analysis of the relationship between Plaintiff's injuries and potential punitive damages. There is no claim here for intentional infliction of emotional distress or discrimination and no allegations of egregious abusive conduct that might result in a substantial award of punitive damages. Moreover, Plaintiff was able to fully mitigate her damages within approximately one month of being terminated, and her alleged emotional distress has not required her to seek medical

treatment at this time. While the cases cited by Defendant do "demonstrate the potential for large punitive damage awards in cases involving Section 1102.5 claims and wrongful termination claims," it does not necessarily follow that such an award is likely or even possible in this case. Defendant has simply provided no basis on which the Court could conclude that potential punitive damages in this case might place the amount in controversy above the jurisdictional minimum.

Plaintiff also seeks $10,000 in penalties under California Labor Code section 1102.5 and $10,000 under PAGA. However, only $2,500 of the PAGA penalty should be considered since the remaining 75% of the penalty will go to the state, rather than Plaintiff, in the event that Plaintiff prevails. *See Controulis v. Anheuser-Busch*, 2013 WL 6482970 at *2 (C.D. Cal. Nov. 20, 2013) ("the 75 percent of PAGA penalties paid to the state should not be included in the amount in controversy calculation"). Accordingly, only $12,500 should be included in the amount in controversy with respect to statutory penalties.

Lastly, Plaintiff requests an award of attorneys' fees. With respect to the inclusion of attorneys' fees in the amount in controversy, Ninth Circuit courts are split as to whether the court should include only attorneys' fees that have already accrued at the time of removal or all fees likely to accrue over the lifetime of the case. The Court need not decide here whether future attorney's fees may, or must as Defendant contends, be considered in the amount in controversy as a matter of law because Defendant's estimate of future attorneys' fees is far too speculative. At the time of removal, Plaintiff had accrued attorneys' fees of only $4,550. Defendant has provided no analysis of future attorneys' fees in this case, except to state that Plaintiff's attorney charges an hourly rate of $650 per hour and that 100 hours is a "conservative and reasonable estimate" of work on "employment cases." *See Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *6 (C.D. Cal. March 3, 2015). But "employment cases" is a broad category encompassing many types of claims and a broad range of possible employer misconduct. *Sasso* was a FEHA discrimination case, and the plaintiffs lost wages were over ten times those claimed by Plaintiff here. Defendant has not provided a reasonably accurate basis for estimating attorneys' fees in this case. Without "summary-judgment-type evidence" with which to approximate Plaintiff's future attorney's fees, and given the relatively low damages sought for lost wages, this Court finds that

Defendant's estimate of 100 hours is too speculative to be included in calculating the amount in controversy. *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018).

Assuming lost wages of $3,500, emotional distress damages of $25,000, punitive damages of $25,000, statutory penalties totaling $12,500, and attorneys' fees of $4,550, the amount in controversy is approximately $70,550. Although an award in excess of this amount may be plausible, Defendant has not met its burden of proving by a preponderance of the evidence that the $75,000 threshold for diversity jurisdiction is met.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand is GRANTED. (Dkt. No. 7).

Dated: December 12, 2018.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE